ORDERED.

Dated:  September 16, 2016

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:  Case No. 9:10-bk-30383-FMD
Chapter 13

Arlene Roth,

Debtor.
_____/

**MEMORANDUM OPINION SUPPLEMENTING ORDER DENYING DEBTOR'S SECOND VERIFIED MOTION FOR SANCTIONS AGAINST NATIONSTAR MORTGAGE FOR VIOLATION OF THE DISCHARGE INJUNCTION (DOC. NO. 68)**

THIS CASE came on for hearing on February 25, 2016, and May 26, 2016, on the *Second Verified Motion for Sanctions against Nationstar Mortgage, LLC for Violation of the Discharge Injunction* (Doc. No. 68) (the "Motion") filed by Debtor Arlene Roth ("Debtor") and the opposition to the Motion filed by Nationstar Mortgage, LLC ("Nationstar") (Doc. No. 72). In the Motion, Debtor sought sanctions against Nationstar for its actions to collect a prepetition debt from Debtor after confirmation of her Chapter 13 Plan and entry of her bankruptcy discharge.

On May 26, 2016, the Court announced its ruling and requested that Nationstar's counsel submit an order that denied the Motion for the reasons stated orally on the record in open court.

Debtor's counsel requested that the Court issue a written opinion. After some delay,[1] on June 15, 2016, the Court entered its *Order (1) Denying Debtor's Second Motion for Sanctions (Doc. No. 68); (2) Striking Debtor's Notice of Withdrawal of Second Motion for Sanctions (Doc. No. 78); and (3) Denying Nationstar's Motion for Sanctions (Doc. No. 80)* (Doc. No. 81) (the "Order"). In the Order, the Court reserved the right to supplement the Order with a written memorandum opinion.[2]

On June 24, 2016, Debtor filed a notice of appeal,[3] which is now pending in the District Court. The Court filed a notice of intent to supplement the record.[4] This memorandum opinion follows.

## **FACTS**

On December 22, 2010, Debtor filed her petition for bankruptcy relief under Chapter 13. In her bankruptcy schedules, Debtor listed "Bac Home Loans Servici[ng]" as the holder of the first mortgage on the property at 2617 Nightshade Lane, Fort Myers, Florida (the "Property") and stated that she would surrender the Property.[5] Likewise, in her Chapter 13 Plan (the "Plan"), Debtor stated that she would surrender the Property.[6] On October 2, 2011, the Court entered an order confirming the Plan.[7]

---

[1] One day after the Court announced its ruling, Debtor filed a *Notice of Withdrawal of Second Motion for Sanctions for Violation of Discharge Injunction* (Doc. No. 78) (the "Notice of Withdrawal"). The Court entered an order that, *inter alia*, struck the Notice of Withdrawal. (*See* Doc. No. 81.)

[2] *See Silverthorne v. Laird*, 460 F.2d 1175, 1178-79 (5th Cir. 1972) (filing of appeal does not divest lower court of its ability to enter an order memorializing its ruling and amplifying the lower court's views).

[3] Doc. No. 83.

[4] Doc. No. 92.

[5] Doc. No. 1, p. 14.

[6] Doc. No. 2, p. 3.

[7] Doc. No. 39.

BAC Home Loans Servicing, LP, timely filed a proof of claim.[8] Thereafter, Nationstar filed a *Transfer of Claim Other than for Security* of Claim No. 4 from BAC Home Loan Servicing, LP, to Nationstar.[9]

Debtor made all payments due under the Plan. On June 27, 2014, the Court entered the *Discharge of Debtor after Completion of Chapter 13 Plan* (the "Discharge Order).[10] The Discharge Order was served on Nationstar.[11]

Commencing in October 2014, after the Discharge Order had been entered, Nationstar began sending monthly statements to Debtor. Debtor filed a motion for sanctions against Nationstar for violation of the discharge injunction (the "First Sanctions Motion").[12] On October 8, 2015, at a preliminary hearing on the First Sanctions Motion, Debtor's attorney announced that Debtor and Nationstar had entered into a confidential settlement agreement. Debtor's attorney withdrew the motion in open court.[13]

Just a few weeks later, on November 18, 2015, Nationstar sent Debtor a notice titled "Informational Statement."[14] The Informational Statement reflects an amount due of $70,986.87, with a payment due date of December 1, 2015. The first page of the Informational Statement includes the following paragraph:

> This statement is sent for *informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you,* or as a demand for payment from any individual protected by the United States Bankruptcy Code. *If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt.* Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its

---

[8] Claim No. 4.
[9] Doc. No. 52.
[10] Doc. No. 57.
[11] Doc. No. 58, p. 1.
[12] Doc. No. 64.
[13] Doc. No. 67.
[14] Doc. No. 68-5.

>lien interest, only against the property securing the original obligation. If you do not wish to receive this monthly informational Statement in the future, or if you have any questions regarding this accounts [sic], please call 877-782-7612.[15]

At the bottom of the second page of the Informational Statement is a detachable coupon, labeled "VOLUNTARY PAYMENT COUPON."

Upon receipt of the Informational Statement, Debtor filed the instant motion, again seeking sanctions against Nationstar for violation of the discharge injunction (the "Second Sanctions Motion").[16] Nationstar filed a written response, stating that the Informational Statement was just that, "a statement intended to inform [Debtor] the amount she need pay *if* she wish[ed] to reinstate her mortgage and keep her house – nothing more."[17]

## DISCUSSION

Under § 524(a)(2), a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."[18] In *In re Hardy*,[19] the court stated "[s]ection 524 of the bankruptcy code provides the debtor with a post-discharge injunction against collection of debts discharged in bankruptcy, and thus embodies the 'fresh start' concept of the bankruptcy code." Bankruptcy Courts may invoke their statutory contempt power under § 105 to provide a remedy for willful violations of the discharge injunction.[20]

---

[15] Doc. No. 68-5 (emphasis supplied).
[16] Doc. No. 68.
[17] Doc. No. 72, p. 1.
[18] Unless otherwise stated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. 101, et seq.
[19] 97 F.3d 1384, 1388-89 (11th Cir. 1996).
[20] *In re Wynne*, 422 B.R. 763, 768 (Bankr. M.D. Fla. 2010) (finding that "even though § 524 does not expressly authorize a 'private right of action' for violations of the discharge injunction, courts may exercise their contempt power under § 105 to enforce the provisions of § 524.").

Section 524 prohibits behaviors such as calling and sending letters to a debtor that are tantamount to debt collection practices.[21] But Section 524 does not bar a creditor from contacting a debtor who received a discharge in bankruptcy. Courts have recognized circumstances where communication between a creditor and a debtor may be appropriate regarding a discharged loan. For example, the court in *In re Wallace*,[22] stated that there may be circumstances where a debtor discharged from a loan obligation needs to know the amount due.

To establish a violation of § 524, Debtor must prove that Nationstar willfully violated the discharge injunction.[23] In *Hardy*, the Eleventh Circuit Court of Appeals held that a creditor willfully violates the discharge injunction if: (1) the creditor knew that the discharge injunction was invoked; and (2) the creditor intended the actions which violated the injunction.[24]

Here, Nationstar had actual knowledge of Debtor's discharge. Indeed, Nationstar had settled Debtor's claims in the First Sanctions Motion. Therefore, the issue before the Court is whether the Informational Statement was an attempt to collect a discharged debt as a personal liability from Debtor or a mere communication regarding a discharged loan.

In determining whether a communication is an attempt to collect a debt under the Fair Debt Collection Practices Act ("FDCPA"),[25] the Eleventh Circuit Court of Appeals stated that "courts should look to the language of the letters in questions, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered. . . ."[26] Here, the Informational Statement includes conspicuous language that the statement was sent for informational purposes only and is not intended as a demand for payment from any individual protected by the Bankruptcy

---

[21] *In re Henriquez,* 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (discharge prevents "only those [communications] designed to collect, recover or offset any such debt as a personal liability of the debtor").
[22] 2011 WL 1335822, at *6 (Bankr. M.D. Fla. April 5, 2011).
[23] *In re Mele*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013).
[24] 97 F.3d at 1390 (quoting *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)).
[25] 15 U.S.C. § 1692, *et seq.*
[26] *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015).

Code. The Informational Statement also provides a contact number for Debtor to request the discontinuation of further Informational Notices.

Relying upon the holdings of *In re Draper*[27] and *Leahy-Fernandez v. Bayview Loan Servicing, LLC*,[28] Debtor argues that, notwithstanding the Informational Statement's disclaimers, Nationstar engaged in improper debt collection practices. But the facts in *Draper* and *Leahy-Fernandez* are readily distinguished from this case.

In *Draper*, the debtor filed a Chapter 13 case. Her Chapter 13 plan provided for the cure of mortgage arrearages and, presumably, the debtor was also making monthly regular mortgage payments through the plan. After the plan was confirmed, the mortgage holder sent monthly invoices to the debtor soliciting additional payments from her. The invoices included two sentences that informed the debtor that the statement was for informational purposes only and the debtor could request to discontinue receiving the statements. Despite the debtor's numerous requests that the mortgage holder cease sending the monthly invoices, she continued to receive them. The court found the disclaimer language of the invoice to be insufficient, held that mortgage holder had violated the automatic stay, and assessed fees against the mortgage holder in the amount of $1,020.00.

The language in Nationstar's Informational Statement is significantly broader than that of the language of the invoice in *Draper*. And in *Draper*, the invoices solicited *additional* payments, and the mortgage holder continued to send the invoices despite the debtor's repeated requests that it stop doing so. Here, the Informational Statement includes no payment demand, deficiency notice, or acceleration notice, the types of content that were found by the court in *In re Grihalva*,[29] to violate

---

[27] 237 B.R. 502 (Bankr. M.D. Fla. 1999).
[28] 2016 WL 409633 (M.D. Fla. 2016).
[29] 2013 WL 5311227, at *4 (Bankr. D. Nev. September 3, 2013).

the discharge injunction. Nor does Debtor allege that Nationstar made phone calls or other collection efforts.[30]

In *Leahy-Fernandez*, the debtor filed a Chapter 13 bankruptcy. She listed a mortgage serviced by creditor Bayview in her bankruptcy schedules and stated her intent to surrender the mortgaged property. Although the debtor successfully completed her Chapter 13 plan and received a discharge, Bayview continued to send billing statements stating that the debtor was past due in her payments. Despite debtor's attorney sending letters to Bayview instructing it to cease communications with the debtor, Bayview continued to send statements. After reviewing Bayview's statements, the court found that its communications constituted an attempt to collect a debt. The court reasoned that a one-sentence disclaimer in fine print on the second page of the statement was insufficient to shield the loan servicer from liability.

But here, the disclaimer language in the Informational Statement is not limited to one sentence buried in boilerplate language on the second page. Rather, the disclaimer is prominently displayed in bold on the first page and extensively describes the purpose for the communication: that the Informational Statement does not attempt to collect a debt, and that Debtor can request the discontinuation of further communication. The Informational Statement does not demand payment, nor – unlike creditor Bayview's statements in *Leahy-Fernandez* – does it even request that payment be made.

The language of the Informational Statement is substantially similar to that analyzed by the court in a case brought under the FDCPA. In *Helman v. Udren Law Offices, P.C.*,[31] the court considered statements sent to the borrower that included the following language prominently displayed above the payment coupon:

---

[30] *In re Mele*, 486 B.R. at 558 (finding that creditor did not attempt to collect a discharged debt where creditor did not make any telephone calls to debtor and sent debtor informational statements regarding loan).
[31] 85 F. Supp. 3d 1319, 1327 (S.D. Fla. 2014).

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you. . . . . If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect upon a debt.[32]

The *Helman* court found that this express language did not constitute a demand for payment, as it was specifically addressed to those persons who received a bankruptcy discharge and, as a matter of law, that the statements "did not constitute debt collection activity."[33]

Here, the Informational Statement includes language identical to that in the *Helman* disclaimer. And as in *Helman,* the disclaimer language of the Informational Statement is prominently displayed and clearly states it is for informational purposes only. In *Bailey v. Sec. Nat. Servicing Corp.*,[34] the court held that a statement that does not include a demand for payment, but merely relays pertinent information to a borrower regarding the current status of their account, is not considered a debt collection activity.

The payment coupon attached to the Informational Statement is labeled "Voluntary Payment Coupon" indicating that any payment made would be made voluntarily by Debtor and was not required or demanded from Nationstar. Section 524(f) specifically contemplates a debtor's ability to make voluntary payments on a discharged debt.[35] This is to enable a debtor who wishes to retain property otherwise subject to foreclosure after entry of the discharge to cure arrearages and reinstate the mortgage or payments.[36] As Nationstar had not completed a foreclosure of the Property when the Informational Statement was sent, Debtor could, under § 524(f), elect to voluntarily pay Nationstar and reinstate her mortgage payments and retain the Property.

---

[32] *Id.*

[33] *Id.* The *Helman* court expressed no opinion on whether creditor's actions violated the borrower's bankruptcy discharge and left that determination to the discretion of the Bankruptcy Court.

[34] 154 F.3d 384 (7th Cir. 1998).

[35] Section 524(f): "Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."

[36] *See In re Ramirez*, 273 B.R. 620, 624 (Bankr. C.D. Cal. 2002).

As noted above, a creditor may have contact with a debtor post-discharge so long as the communication does not amount to an attempt to collect a debt. Although Debtor stated her intent to surrender the Property in her Chapter 13 case – filed nearly six years ago – and therefore argues that Nationstar had no reason to contact her other than to collect a debt, she still retained certain rights as the owner of the Property until Nationstar exercised its *in rem* foreclosure rights against the Property. Debtor's circumstances might have changed and she might wish to retain ownership of the Property. Thus, some contact by Nationstar with Debtor until Nationstar exercises its *in rem* foreclosure rights is appropriate.[37]

Although it was no doubt frustrating to Debtor that, shortly after she settled the claims in the First Sanctions Motion, she received yet another Informational Statement from Nationstar, she can hardly have thought that Nationstar was trying to collect the discharged debt.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Informational Statement does not amount to an attempt to collect a debt in violation of the discharge injunction imposed by § 524.

Accordingly, it is

**ORDERED** that Debtor's Motion (Doc. No. 68) is **DENIED.**

The Clerk's Office is directed to serve a copy of this Order on interested parties via CM/ECF.

---

[37] *In re Henriquez*, 536 B.R. 341, 346-47 (Bankr. N.D. Ga. 2015) (holding that secured creditor who sent informational statements to the debtors in an attempt to keep them informed was appropriate given that the debtors retained interests in the surrendered property until the secured creditor's *in rem* rights were exercised).